**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 13 |
| J Graham Zahoruiko, | Case No. 24-20139 (JJT) |
| Debtor. | Re: ECF Nos. 40, 45, 46, 50 |

**MEMORANDUM OF DECISION AND**
**ORDER OVERRULING DEBTOR'S OBJECTION TO**
**CLAIM 13-1 AND GRANTING CREDITOR'S MOTION TO DISMISS**

Before the Court is the Debtor's Objection to Claim 13-1 (ECF No. 46) and

Premier Capital, LLC's Motion to Dismiss Case for Bad Faith (ECF No. 40). The

Debtor objected to the Motion to Dismiss (ECF No. 45), while Premier objected to

the Debtor's Objection to its claim (ECF No. 50). The Court held an evidentiary

hearing on the Debtor's Objection and the Motion to Dismiss on October 3, 2024,

where the Debtor, his counsel, and counsel for Premier appeared in support of their

respective positions. Following the hearing, the Court ordered the parties to submit

supplemental briefs. For the following reasons, and after thorough review of the

hearing record, including the pleadings, briefs, and exhibits herein, the Debtor's

Objection to Claim is overruled and the Motion to Dismiss is granted.

## 1. Background

On July 1, 2003, the Debtor's former company, Refresh Software Corporation,

entered into a Promissory Note and Forbearance Agreement with Premier (ECF No.

50).[1] The Note and Agreement stated that Refresh would pay the principal balance of $128,000 to Premier, plus interest. The Debtor signed the Note and Agreement on July 1, 2003, in North Chelmsford, Massachusetts, first as the President of Refresh, and again as a personal guarantor.[2]

After Refresh defaulted on the Note in 2009, Premier sued Refresh and the Debtor in the Superior Court of Massachusetts to enforce its rights under the Note.[3] On December 23, 2014, the Superior Court awarded Premier a final judgment against the Debtor and Refresh, jointly and severally, in the sum of $316,314.14.[4]

The Debtor filed this Chapter 13 case on February 21, 2024. That same day, the Debtor filed his proposed Chapter 13 Plan (ECF No. 4) which has neither been amended nor modified since. On April 26, 2024, Premier timely filed Claim 13-1 in

---

[1] A copy of the Note appears as Exhibit A in Premier's Objection to the Debtor's Objection to Claim 13-1 (ECF No. 50).

[2] The guaranty reads, "I, J Graham Zahoruiko, do hereby unconditionally guaranty the repayment of the obligations, as defined above, of Refresh Software Corporation to Premier Capital LLC" and is followed by the Debtor's signature (ECF No. 50, Exhibit A).

The Note was not notarized, but it was witnessed by Timothy M. Mitchelson.

[3] *See Premier Capital Limited Liability Company v. Refresh Software Corporation & J. Graham Zahoruiko*, No. MICV2010-0228 (Mass. Super. Ct. Dec. 23, 2014).

The Court takes judicial notice of not only this case, but also four other cases brought to the Court's attention throughout these proceedings:

(1) the Debtor's prior Chapter 7 Bankruptcy filed in Massachusetts in 2012, *In re* J Graham Zahoruiko, No. 12-41662 (Bankr. D. Mass. July 28, 2014);

(2) the adversary proceeding that Premier filed therein, *Premier Capital, LLC v. Zahoruiko* (*In re* Zahoruiko), Ch. 7 Case No. 12-41662, Adv. No. 12-04119 (D. Mass. Oct. 17, 2013);

(3) the Debtor's 2014 case charging Premier and others with numerous counts, including racketeering, extortion, and intentional infliction of emotional distress, *J Graham Zahoruiko v. Richard Gleicher, et al.*, No. 4:14-cv-40077-TSH (D. Mass. March 29, 2016); and

(4) Premier's 2022 case filed against the Debtor demanding judgment on the Note and seeking wage garnishment, *Premier Capital, LLC v. J. Graham Zahoruiko*, No. 22-06-CV-00397 (Mass. Super. Ct. Feb. 27, 2023).

[4] The Superior Court concluded that Premier was owed the sum of $178,377.87, with interest thereon in the sum of $95,239.95, as well as attorney's fees in the sum of $42,696.32, for a grand total of $316,314.14.

the amount of $651,462.25 on the basis of the judgment obtained against Refresh and the Debtor in the Superior Court of Massachusetts in 2014.[5] Thereafter, on August 1, 2024, Premier also filed a Motion to Dismiss, arguing that "ample evidence [demonstrates] that the Debtor's Chapter 13 Plan was prepared and filed in bad faith, and for the primary purpose of avoiding Premier's wage garnishment which went into effect after almost two decades of litigation with Premier." Some of the evidence that Premier relies upon as demonstrating the Debtor's bad faith includes: the Debtor's voluntary contributions to retirement plans of $1,496.86 per month, depriving his unsecured creditors of greater dividends; the Debtor's inclusion of three adult children in his household size, which Premier contends may impact his Means Test;[6] and the Debtor's failure in his Chapter 13 Plan to apply all the Debtor's projected disposable household income to make payments to his unsecured creditors.[7] Specifically, the Debtor's monthly disposable income under 11 U.S.C. § 1325(b)(2) is $1,507.34 on Form 122C-2 (ECF No. 2), while his Plan (ECF No. 4) only proposes to pay $1,200.00 per month. Further, the Chapter 13 Plan ignores the treatment of Premier's Claim.

---

[5] In arriving at this amount, Premier took the sum of $316,314.14 that the Debtor was ordered to pay in the final judgment in 2014 and added the statutory interest rate on the judgment of twelve per cent per annum. *See* Mass. Gen. L. ch. 231, § 6C. Concluding that the interest accrued thereon as of April 26, 2024 was $359,930.46 but subtracting $19,782.35 for payments already made, Premier arrived at its claimed amount of $651,462.25.

[6] The Debtor includes his 24-year-old son, 24-year-old daughter, and 19-year-old stepdaughter. His son and daughter do not contribute to the household's income.

[7] The Chapter 13 Standing Trustee shares these concerns and objects to confirmation of the Plan (ECF No. 23). The Trustee notes in the objection that the Debtor has failed to maintain plan payments, the Plan does not conform to the claims filed, the Plan fails to provide that all of the Debtor's projected disposable income will be applied to make payments to unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B), and the Means Test may overstate household size. The Debtor has failed to rebut these representations.

In his Objection to the Motion to Dismiss (ECF No. 45), the Debtor simply advances, without subsequent evidentiary support, that his Chapter 13 Plan proposes to dedicate all his disposable income to plan payments and that his Plan demonstrates the requisite good faith.

In his Objection to Claim 13-1, the Debtor does not dispute that he signed the Note, nor that Premier obtained a judgment against him before the Superior Court of Massachusetts in 2014. Nevertheless, the Debtor asks the Court to disallow Premier's claim because chain of title issues allegedly plague Premier's ownership of the underlying loan and, alternatively, even should Premier have a valid claim, the amount of the claim is inexplicably high. The Debtor theorizes that the amount is perhaps artificially high due to "potential errors, improper interest, or unjustified fees . . . ."[8] Those alleged irregularities are not otherwise proven or quantified by the Debtor.

In response, Premier asserts that the Debtor's claims on chain of title issues are "completely misplaced" and demonstrate that "the Debtor [is] moving in bad faith in this proceeding." Premier contends that the July 1, 2003 agreement in which Premier loaned the Debtor's company $128,000 squarely evidences the debt now owed, and that the final judgment entered by the Superior Court of Massachusetts in 2014 pertaining to that agreement now collaterally estops the Debtor from relitigating any issues pertaining to that judgment in this Court.

---

[8] The Debtor essentially contends, without proof, that because his former company, SpaceWeb Corporation, owed Sovereign only $27,543 on June 22, 2002, and because Premier was since paid $111,309, Premier could not possibly now be owed the $651,462.25 claimed.

4

This Court held a combined evidentiary hearing on both the Debtor's Objection and the Motion to Dismiss on October 3, 2024. In anticipation of this hearing, Premier and the Debtor filed lists of witnesses and exhibits on the docket (ECF Nos. 60, 62, 63). Four of the Debtor's six exhibits were admitted in full at the hearing, while all twenty-seven of Premier's exhibits were admitted in full thereafter (ECF No. 82). Premier and the Debtor both appeared and their arguments were heard. No witnesses were ultimately called to testify.

The Debtor first explained the history of the loan, asserting that Fleet Bank originally loaned $100,000 to his company, SpaceWeb Corporation, and that when Sovereign Bank took over some portion of Fleet, Sovereign claimed ownership of the loan and informed the Debtor that a $27,000 balance remained. [9] The Debtor argued, however, that Fleet never actually assigned the loan to Sovereign.[10] The Debtor reported that Sovereign then sold the loan to Premier, and that Premier later sued the Debtor and SpaceWeb (by then renamed Refresh Software Corporation) in Massachusetts claiming over $100,000 was owed. In response to this demand, the Debtor negotiated a resolution with Premier. The parties settled the matter, with the Debtor signing a Note of $128,000, once on Refresh's behalf as President, and again as a personal guarantor.[11] At some point in time, the Debtor reported that he learned that the loan had not been properly assigned to Sovereign

---

[9] Although the Debtor laid out a series of events, he did not provide specific dates alongside each event described.

[10] The Debtor did not put forth any evidence as to whether Fleet did or did not assign the loan to Sovereign.

[11] Although Debtor's counsel at the hearing reported the amount owed on that Note as $125,000, the actual amount owed according to the Note was $128,000. The Court construes the reference to $125,000 as an estimate.

and stopped making payments. Specifically, the Debtor contended that the Purchase & Sale Agreement between Sovereign and Premier was invalid because the signatures did not match the signatures of the bank officers on earlier documents. The Debtor claimed that Premier knew about this assignment issue, did not bring it to the Debtor's attention, induced him to sign the new Note, and has never proven that it is the true holder of the Note. The Debtor stated, however, that he did not advance these alleged chain of title issues at the 2014 trial before the Superior Court of Massachusetts.[12]

Lastly, the Debtor again challenged the amount due, asserting that the amount of interest Premier now claims is inaccurate and that no credit was given for the amounts the Debtor already paid via wage garnishment.

In response, Premier has asserted that the Debtor has repeatedly raised the alleged chain of title issues in the years of litigation that have ensued between the

---

[12] Debtor's counsel insinuated that attorneys in prior cases had somehow prevented these alleged issues from being brought to the attention of other courts.

Contrary to this insinuation, the Court notes that, having reviewed the dockets of other cases in which Premier and the Debtor have addressed the validity of the Note, the Debtor has previously alleged that chain of title issues plague Premier's ownership of the Note in at least two cases.

For example, in *Premier Capital, LLC v. Zahoruiko* (*In re* Zahoruiko), Adv. No. 12-04119 (D. Mass. Oct. 17, 2013), the Debtor in his Answer on page 6 raises as his Fourth Affirmative Defense that "The Note purportedly obtained by [Premier], and which was the ground for the 2010 lawsuit referenced in the Complaint [in the Superior Court of Massachusetts], was obtained by bad faith, misrepresentation, fraud, and unfair and deceptive practices by [Premier] and is void or voidable as a result thereof."

Again, in *J Graham Zahoruiko v. Richard Gleicher, et al.*, No. 4:14-cv-40077-TSH (D. Mass. March 29, 2016), the Debtor's Complaint at page 68 charges Premier and the other defendants with unjust enrichment, arguing that the "[d]efendants, [including Premier,] were enriched and benefited by appropriating payments they were not entitled to receive as they were a direct result of their skul[l]duggery. Defendants have received benefits in various ways, including through direct payments. Defendants recognized, accepted, and retained all these benefits at [the Debtor's] expense, knowing that they were cheating him out of monies that he was not obligated to pay." Similarly, on page 69, the Debtor charges Premier with conversion, arguing that the "[d]efendants," [including Premier,] . . . during the whole existence of their pursuit of [the Debtor's] money, never owned a lawful right to collect upon it."

6

parties preceding the instant case. In conclusion, Premier contends that the Debtor is collaterally estopped from again raising these alleged issues before this Court. Regarding the amount due, Premier has explained that the claim is so high because it has been left unpaid and accruing interest for over twenty years.

In its supporting brief (ECF No. 77), Premier further represents that its claim for $671,244.60 is comprised of the judgment awarded by the Superior Court of Massachusetts of $316,314.14, as well as ten years of statutory interest at the statutory rate of 12% per annum, here amounting to $354,930.46. *See* Mass. Gen. L. ch. 231, § 6C. Premier finally argues that the Debtor has filed his Chapter 13 plan in bad faith "for the sole purpose of avoiding Premier's wage garnishment after decades of litigation" and asks the Court to dismiss the case with a two-year bar for refiling. *See* 11 U.S.C. §§ 105(a), 349(a), and 1307 (c).

In his supporting brief (ECF No. 76), the Debtor reiterates his conjecture and unsubstantiated concerns about the chain of title on his loan and the total amount owed, and his allegations that the Debtor and Refresh were coerced into signing the July 1, 2003 agreement with Premier and that the judgment is thus the result of fraud.[13] The Debtor contends that his Objection is not barred by the *Rooker–Feldman* Doctrine, nor res judicata, nor collateral estoppel because neither the

[13] The Debtor has not identified a scintilla of evidence to support this conclusion. Under Massachusetts law, fraudulent inducement "requires evidence of 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.'" *Okoli v. Okoli*, 81 Mass.App.Ct. 381, 391, 963 N.E.2d 737 (2012). *See also Trust v. Hayeck*, 46 Mass.App.Ct. 687, 692, 709 N.E.2d 1122 (1999); *Hogan v. Riemer*, 35 Mass.App.Ct. 360, 365, 619 N.E.2d 984 (1993). These elements must be proven by a preponderance of the evidence. *See Keating v. Pappalardo*, 74 Mass.App.Ct. 1102, at *4, 903 N.E.2d 607 (2009) (unpublished opinion).

7

chain of title defects nor the issue of fraud were raised before the Superior Court of Massachusetts in 2014.

In its reply brief (ECF No. 80), Premier asserts that the Debtor has failed to meet his burden of proof regarding his Objection and that this Court does not have jurisdiction to review the judgment that the Debtor now complains about. Premier cites not only the aforementioned case in the Superior Court of Massachusetts, in which the Debtor "filed papers . . . [denying] the validity and/or enforceability of the Note[,]" but also the Debtor's 2012 Chapter 13 Bankruptcy case, filed in the United States Bankruptcy Court for the District of Massachusetts. Premier asserts that the Debtor raised the same challenges therein specifically alleging that "Premier could not prove that it was the rightful holder of the Fleet Note and, apparently, that Premier had no right to enforce the Note" – arguments that Premier states "are essentially identical to the arguments raised in the Debtor's Brief" to this Court.[14]

## 2. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on

---

[14] To evidence its assertion, Premier included as Exhibit A to its reply brief a transcript from the 2012 Chapter 13 Bankruptcy case, at which Premier's counsel filed a motion in limine to preclude the Debtor from introducing evidence regarding the promissory note that the Debtor entered into with Fleet in 1996. In the transcript, Premier's counsel explains that the Debtor is attempting to claim that "because there was . . . purportedly [no] evidence of assignment" to Premier, that Premier does not have standing to raise its complaint as a creditor.

Premier also included as Exhibit B to its reply brief the decision of the United States Bankruptcy Court for the District of Massachusetts granting that motion in limine.

The Court is well within its province to take judicial notice of these submissions relating to court proceedings to which no objection has been interposed or would be sustained.

reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### 3. The Objection to Claim

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Unless a party in interest objects, it is deemed allowed. 11 U.S.C. § 502(a). An objection must be lodged in accordance with Fed. R. Bank. P. 3007. The objecting party must "produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Driscoll*, 379 B.R. 415, 420 (Bankr. D. Conn. 2008) (citations omitted). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citations omitted).

Here, Premier's properly filed proof of claim is prima facie evidence of the claim's validity and amount. The Debtor as the objecting party must produce sufficient evidence to negate at least one of the sworn facts in the proof of claim to revert the burden to Premier to prove its claim. Aside from bald assertions of his

beliefs, the Debtor has advanced insufficient evidence to shift any burden of proving its claim back to Premier.

This Court has before it the multiple briefs both parties have filed; the thirty-one exhibits admitted in full, including the Note at issue; the dockets of three other courts illustrating the long history of litigation between the Debtor and Premier regarding this debt;[15] and the arguments and admissions made at the evidentiary hearing. Having reviewed this record, the Debtor's Objection has not only failed to meet his burden, but is also clearly barred by the prior Massachusetts state court final judgment under the *Rooker–Feldman* doctrine, and the doctrines of res judicata and collateral estoppel.

### a. The *Rooker–Feldman* Doctrine

The "*Rooker–Feldman* [doctrine] directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites [federal] court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). "Even where a plaintiff alleges that a state court judgment was procured by fraud, *Rooker–Feldman* will divest the federal court of jurisdiction." *Gonzalez v. Ocwen Home Loan Servicing*, 74 F.Supp.

---

[15] *See* cases cited *supra* note 3.

3d 504, 514 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F.App'x 32 (2d Cir. 2016).

The *Rooker–Feldman* doctrine here clearly deprives the Court of subject matter jurisdiction over the Debtor's Objection. The Debtor plainly lost in state court in Massachusetts and now complains of injuries caused by that judgment and invites this Court to review that judgment. Further, the state court judgment was entered in 2014, well before this federal bankruptcy suit commenced in 2024. Accordingly, this Court does not have subject matter jurisdiction over the Debtor's Objection. The Debtor's now belated, bold, and unproven assertions that the judgment was procured through fraud do not grant this Court jurisdiction. *See Gonzalez*, 632 F.App'x at 34.

### b. Res Judicata

The Debtor's Objection is also barred by the doctrine of res judicata. Under Massachusetts law,[16] "[t]he elements of claim preclusion are: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits[.]'" *Saade v. Wilmington Trust, National Assoc.*, 494 Mass. 1013, 1015, 232 N.E.3d 1192 (2024).

Here, the parties to the present and prior actions are identical, as are the causes of action. In its judgment, the Superior Court of Massachusetts heard Premier's claim that it was a proper plaintiff and holder of this debt and ruled in

---

[16] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Accordingly, Massachusetts law applies here.

Premier's favor. Here, the cause of action is identical: the Debtor attempts to dispute whether Premier is a proper creditor and holder of the exact same debt. The judgment of the Superior Court of Massachusetts is a prior final judgment on the merits. Accordingly, the elements of claim preclusion are met, and the Debtor's Objection is legally barred.

### c. Collateral Estoppel

Finally, the Debtor's Objection is barred by the doctrine of collateral estoppel, as well. "The doctrine of collateral estoppel, also known as issue preclusion, provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Kimbroughtillery v. Commonwealth*, 471 Mass. 507, 509, 30 N.E. 3d 841 (2015) (quoting *Commonwealth v. Lopez*, 383 Mass. 497, 499, 420 N.E.2d 319 (1981)).

The issues of fact determined in the prior state court proceeding encompassed whether Premier was entitled to recover on its Note against whom and for how much. Here, through his belated and recharacterized "defenses," the Debtor seeks to relitigate the same issues. Further, he seeks to litigate these issues between the same parties after a valid and final judgment. These issues and those which could have been raised during the state court trial cannot be advanced in this bankruptcy proceeding.

***

In sum, the doctrines of collateral estoppel, res judicata, and the *Rooker–Feldman* doctrine prohibit this Court's review of the prior final state court judgment.[17] Accordingly, the Debtor's Objection to Claim of Premier challenging that judgment is overruled as without merit on the law and failing in its burden of proof on the facts.

### 4. Motion to Dismiss

Premier further seeks the dismissal of this Chapter 13 case and the imposition of a two-year bar pursuant to 11 U.S.C. §§ 1307(c) and 349(a).

Regarding dismissal, this Court has previously noted that:

> While "there is no provision in section 1307 that provides for dismissal of a Chapter 13 case with prejudice. . . . '[t]he legal effects of the dismissal of a chapter 13 case are [instead] governed by section 349.'" *In re Heidel*, 2020 WL 6809805, at *3 (Bankr. D. Conn. 2020) (*quoting* 8 COLLIER ON BANKRUPTCY ¶ 1307.09 (16th ed. 2020)). "Section 349(a) of the Bankruptcy Code establishes a general rule that dismissal of a bankruptcy case is without prejudice, but at the same time expressly grants a bankruptcy court the authority to dismiss a case with prejudice to a subsequent filing of any bankruptcy petition." *In re Casse*, 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998), *subsequently aff'd*, 198 F.3d 327 (2d Cir. 1999).

*In re Traylor*, 628 B.R. 1, 8 (Bankr. D. Conn. 2021).

Section 349(a) states: "Unless the court, for cause, orders otherwise, . . . the dismissal of a case under this title [does not] prejudice the debtor with regard to the filing of a subsequent petition under this title[.]" 11 U.S.C. § 349(a). Thus, "if 'cause'

---

[17] The Debtor has sought review of the prior final state court judgment repeatedly, to no avail. In particular, having reviewed the docket of the Superior Court of Massachusetts in the case that Premier brought against the Debtor, the docket evidences the debt that was established in the prior Superior Court proceeding in 2014. *See Premier Capital, LLC v. J. Graham Zahoruiko*, No. 22-06-CV-00397 (Mass. Super. Ct. Feb. 27, 2023). The Debtor has not brought anything to the Court's attention from that docket, or from any other source, even suggesting that the Debtor's claims against Premier have merit.

warrants, a court is authorized, pursuant to § 349(a), to dismiss a bankruptcy case with prejudice to refiling." *Id.* (*quoting Casse*, supra, 219 B.R. at 662).

Furthermore, this Court has previously observed that Section 349(a) is not the sole source of statutory authority for dismissal when cases arise that threaten an abuse of the bankruptcy process:

> In addition to the express authority to dismiss a case for cause provided under Section 349, Section 105(a) provides that "[n]o provision of this title shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105; *see also In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 201 (Bankr. S.D.N.Y. 2017) ("Section 105(a) is understood as providing courts with discretion to accommodate the unique facts of a case consistent with policies and directives set by the other applicable substantive provisions of the Bankruptcy Code."). Thus, Section 105(a) empowers the Court to act as necessary to prevent an abuse of the bankruptcy process.

*Id.*

Here, the facts illustrate that the Debtor had no intention to propose a confirmable Chapter 13 Plan and that, on account of his reiteration of frivolous claims, this case and his Plan lack a good faith and legitimate bankruptcy purpose. In pursuing this Case, filing an unconfirmable Chapter 13 Plan, and proceeding with his dilatory Objection to Claim 13-1, the Debtor has irrefutably demonstrated that his true and primary intent in the filing of this Case was the meritless delay and relitigation of a judgment decided long ago and the unending evasion and frustration of creditors holding valid claims. Accordingly, as the Plan in this Case is primarily motivated by the Debtor's bad faith desire to hinder, delay, and impede

Premier's collection activities with meritless litigation, it fatally lacks the vital element of good faith confirmability.

Bankruptcy courts must ensure that Chapter 13 plans "ha[ve] been proposed in good faith and not by any means forbidden by law . . . ." 11 U.S.C. § 1325(a)(3). *See also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor."). Such determinations are made on a case-by-case basis through review of the totality of the circumstances. *In re Paulson*, 170 B.R. 496, 498 (Bankr. D. Conn. 1996). "The totality of the circumstances should take into consideration whether the debtor has abused the 'provision, purpose or spirit' of the Bankruptcy Code and whether the filing is 'fundamentally fair' to creditors." *In re Ciarcia*, 578 B.R. 495, 500 (Bankr. D. Conn. 2017). "Factors that courts have considered in determining whether a debtor has failed to pursue a Chapter 13 bankruptcy in good faith are 'whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code.'" *Id.* "A major factor in the decisions running through much of the case law justifying dismissals on the basis of bad faith is the fact that the debtor in each case filed a bankruptcy petition either to escape the consequences of a previous judgment or to avoid impending proceedings." *In re Emiabata*, 642 B.R. 481, 484 (Bankr. D. Conn. 2022) (quoting *In re Blumenberg*, 263 B.R. 704, 715 (Bankr. E.D.N.Y. 2001)).

Although the Debtor filed this Chapter 13 case almost a year ago, a review of the Court's docket shows that he has not put forth a feasible or confirmable plan that would treat Premier and his other creditors fairly and appropriately, nor has he devoted all of his disposable income to his creditors as 11 U.S.C. § 1325(b)(1)(B) requires. The Plan proposes to pay only $1,200 monthly to creditors, while the Debtor's monthly disposable income is $1,507.34 according to Form 122C-2 (ECF No. 2). The Debtor has failed to explain or challenge this discrepancy, raised by both Premier and the Chapter 13 Standing Trustee. Neither has the Debtor resolved, or even *addressed*, the other impediments to confirmation raised by Premier and the Trustee, such as the Plan's failure to conform to the claims filed, the Debtor's voluntary contributions to retirement plans of $1,496.86 per month, which deprive unsecured creditors of greater dividends, and the unanswered question of whether the Debtor's Means Test overstates his household size. Furthermore, although the Trustee raised these impediments many months ago on May 31, 2024, the Debtor has not submitted an amended plan to resolve them.

Having reviewed the totality of the facts and circumstances herein, the Court concludes that the Debtor's intentions and purpose are abusive and dilatory, and that his Chapter 13 Plan lacks good faith.

In light of these findings, the Motion to Dismiss is granted. The Court finds good and sufficient cause exists to dismiss the Debtor's case with a two-year bar to refiling during which time Premier might obtain some redress without the impediments of bankruptcy to its remedies. The Court concludes that a two-year

16

bar is particularly warranted given the Debtor's 14-year saga of evading Premier's efforts to collect on its debt owed. Any subsequent refiling for bankruptcy relief by the Debtor wherein he fails to recognize and appropriately address the bona fide claim of Premier, or to properly fund his Chapter 13 Plan will invite summary dismissal by this Court or sanctions for abuse of process.

## 5. Conclusions

After a thorough review of the record evidence in this case and of the dockets of the Superior Court of Massachusetts and the United States Bankruptcy Court for this Court and the District of Massachusetts, in addition to the Court's consideration of the arguments advanced in the pleadings and at hearings before this Court, and for the reasons stated above, the Court OVERRULES the Objection to Claim 13-1 and GRANTS the Motion to Dismiss.[18] Further, the Court finds that, pursuant to 11 U.S.C §§ 105(a), 349(a), and 1307(c), cause exists to DISMISS the Debtor's case with a two-year bar to refiling for bankruptcy relief.

IT IS SO ORDERED at Hartford, Connecticut this 19th day of December 2024.



James J. Tancredi
United States Bankruptcy Judge
District of Connecticut

---

[18] Premier's Objection to Confirmation of Plan (ECF No. 28) and its two Motions to Extend Time to Extend Date to Object to the Dischargeability of the Debtor's Debt (ECF Nos. 21, 37) are all rendered moot by the dismissal of this case.